UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

CARRIE ADKINS,

                           Plaintiff,

      v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA,

                        Defendant.

NO. 4:20-CV-5104-TOR

ORDER DENYING PLAINTIFF'S
MOTION FOR JUDGMENT AND
GRANTING DEFENDANT'S
MOTION FOR JUDGMENT

BEFORE THE COURT are the parties' cross-motions for judgment on the administrative record (ECF Nos. 17, 19). This matter was submitted for consideration without oral argument.  The Court has reviewed the record and files herein, and is fully informed.  For the reasons discussed below, Plaintiff's Motion for Judgment (ECF No. 17) is DENIED and Defendant's Motion for Judgment (ECF No. 19) is GRANTED.

//

//

ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR JUDGMENT ~ 1

**BACKGROUND**

This is an action to recover long-term disability benefits allegedly owing to Plaintiff under Section 502(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a).  In the instant cross-motions, the parties ask the Court to review the administrative record *de novo* and resolve any factual disputes concerning Plaintiff's entitlement to benefits pursuant to Federal Rule of Civil Procedure 52(a).  The parties are seeking judgment with regard to Plaintiff's claim arising under § 1132(a)(1)(B); Plaintiff's remaining claim under § 1132(a)(3) is not presently before the Court.

For the reasons discussed below, the Court finds that Plaintiff is not "disabled" within the meaning of Defendant's policy and is therefore not entitled to payment of benefits.

**STANDARD OF REVIEW**

The default standard of review in ERISA cases is *de novo*, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Where the plan administrator or fiduciary retains discretionary authority to interpret the plan and determine benefits, then an abuse of discretion standard applies. *Id*.  Here, LINA is the plan fiduciary and has discretionary authority to interpret the terms of the

plan, determine eligibility, and make findings of fact.  AR 1988.  Under Supreme Court and Ninth Circuit precedent, this would ordinarily trigger an abuse of discretion standard.  *See Firestone*, 489 U.S. 101; *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006).

However, Washington state insurance regulations prohibit disability insurance plans from containing discretionary clauses.  *See* WAC 284-96-012. Although ERISA broadly preempts state law and regulation, courts have concluded WAC 284-96-012 invalidates discretionary clauses in disability insurance plans. *See, e.g., Mirick v. Prudential Ins. Co. of Am.,* 100 F. Supp. 3d 1094 (W.D. Wash. 2015).  The parties agree, *de novo* review is the standard here.  *De novo* review affords no deference to the plan administrator's determination.  *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1108 (9th Cir. 2000).  The plaintiff has the burden of proving disability.  *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010).

The parties agree the challenged benefits decision under § 1132(a)(1)(B) should be resolved pursuant to Federal Rule of Civil Procedure 52(a).  ECF No. 13 at 7.  Where a court reviews an ERISA action under Rule 52(a), the court conducts "a bench trial on the record" using the material considered by the plan administrator.  *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999). Evidence outside the administrative record may only be considered when

ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR JUDGMENT ~ 3

1   "circumstances clearly establish that it is necessary to conduct an adequate *de novo*

2   review of the benefit decision."  *Ingram v. Martin Marietta Long Term Disability*

3   *Income Plan for Salaried Emp. of Transferred GE Operations*, 244 F.3d 1109,

4   1115 (9th Cir. 2001) (quotation and citation omitted).  In an ERISA action, the

5   relevant inquiry under Rule 52(a) is not whether there are genuine issues of

6   material fact, but whether the plaintiff "is disabled within the terms of the policy."

7   *Kearney*, 175 F.3d at 1095.  The court must necessarily weigh conflicting evidence

8   and resolve disputed factual issues.  *Id.*  Rule 52(a) further requires the court to

9   "find the facts specially and state its conclusions of law separately."  Fed. R. Civ.

10  P. 52(a)(1).

## SUMMARY OF ADMINISTRATIVE RECORD

### A.    Plaintiff's Symptoms

13         At all times relevant to these proceedings, Plaintiff Carrie Adkins

14  ("Plaintiff") was insured under a disability insurance plan issued by Defendant Life

15  Insurance Company of North America ("Defendant").  This plan provides for long-

16  term disability ("LTD") benefits to an insured who becomes "disabled."  The plan

17  defines "Disability/Disabled" as follows:

> The Employee is considered Disabled if, solely because of Injury or
> Sickness, he or she is:
>
> 1.      unable to perform the material duties of his or her Regular
> Occupation; and

ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR JUDGMENT ~ 4

2.      unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.

AR 44.  The plan defines "Regular Occupation" as:

> The occupation the Employee routinely performs at the time the Disability begins. In evaluating the Disability, the Insurance Company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy. It is not work tasks that are performed for a specific employer or at a specific location.

AR 116.

Plaintiff alleges she began experiencing neck, back, and shoulder pain, as well as traumatic brain injury symptoms, following a car accident in January 2016. ECF No. 17 at 4; AR 644.  Imaging of Plaintiff's cervical spine taken on January 19, 2016 showed "mild degenerative disc disease," "mild spondylolisthesis," and suspected "mild facet arthritis."  AR 3438.  The administrative record does not contain any other medical records from 2016; however, later medical evaluations reference Plaintiff's symptoms during that timeframe.

A psychological report conducted in 2018 summarized a Speech Therapy Initial Plan of Care from February 24, 2016 as follows:

> [Plaintiff] presented with mild to moderage [sic] cognitive and communication deficits secondary to concussion. Cognitive communication assessment revealed reduced complex attention, speed of processing, working memory, verbal fluency and cognitive endurance. All affect her daily functioning. She is unable to track details and information and to express herself effectively. She would

ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR JUDGMENT ~ 5

> like to return to work. She reports moderate impairment in her life. She has vision and balance changes that adversely affect her cognitive-linguistic performance. OT and PT orders are being requested.

AR 633.  Another psychological report conducted in September 2019 indicated Plaintiff attempted to return to work part-time following the accident, but "was forced to leave" due to "severe headaches, confusion, poor concentration, visual impairments, and other sequelae of the presumable head injury."  AR 629.  At the time of the 2016 accident, Plaintiff worked full-time as an office manager for a medical practice in Portland, Oregon.  *Id*.

In May 2107, Plaintiff moved from Portland, Oregon to Walla Walla, Washington because she "found it easier to manage in the smaller town."  AR 644. Plaintiff began working for Providence Medical Center part-time as a receptionist in October 2017.  AR 629, 644.  Plaintiff alleged continued symptoms relating to her brain injury, such as "severe migraines, nausea, vomiting, dizziness, balance problems, light sensitivity" and was "easily over-stimulated."  AR 644.  Plaintiff also reported chronic fatigue and chronic pain.  *Id*.

It is unclear what, if any, medical care Plaintiff received between January 19, 2016 and February 4, 2018.  Medical records for that timeframe are not presently before the Court.

On February 5, 2018, Plaintiff was referred by a disability adjudicator to

ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR JUDGMENT ~ 6

licensed psychologist N.K. Marks, Ph.D., for a "psychodiagnostics memory

assessment." AR 633. Dr. Marks reviewed two medical records, including the

February 2016 Speech Therapy Initial Plan of Care and a June 2017 evaluation

from Insight Osteopathic Medicine, in addition to conducting an in-person exam of

Plaintiff. *Id*. Dr. Marks diagnosed Plaintiff with the following conditions: "Mild

neurocognitive disorder due to traumatic brain injury; Major depressive disorder,

Single episode, Moderate; and Unspecified anxiety disorder, moderate." AR 639.

Regarding Plaintiff's ability to work, Dr. Marks opined Plaintiff could

"manage simple directions that she sees and hears, but not complex directives" and

that Plaintiff's concentration became "tangential at times." AR 639-40. Dr. Marks

also found Plaintiff's "[m]ental fatigue may be worsened with intense social

interactions" and Plaintiff's brain injury made "it hard to process things," which

could lead to Plaintiff becoming "stressed with increased work demands." AR

640. Dr. Marks recommended counseling to assist with Plaintiff's depression and

anxiety. *Id*. It does not appear Plaintiff saw Dr. Marks again.

At some point, Plaintiff began seeing Justin Olswanger, D.O., for her

chronic pain and anxiety. The first record available to the Court is dated March 15,

2018. AR 357. On that date, Dr. Olswanger adjusted Plaintiff's pain medications

and assessed Plaintiff as "alert, cooperative, dressed appropriately" and not in

acute distress. AR 357-58. Dr. Olswanger also noted Plaintiff's reported

1    improvement with anxiety after a reduction in driving and increased walking.  AR

2    357.  Plaintiff continued to see Dr. Olswanger on a regular basis throughout 2018.

3    AR 347-56.  Plaintiff regularly reported stable anxiety but continued to have daily

4    headaches with varying degrees of severity, and chronic neck and back pain.  AR

5    355, 353, 351, 349, 347.  Dr. Olswanger never observed Plaintiff to be in acute

6    distress.  AR 354, 352, 350, 348.  Generally, Plaintiff's complaints of pain

7    remained unchanged and Dr. Olswanger regularly noted "no other symptoms to

8    report."  AR 355, 353, 351, 349, 347.  Plaintiff's medical history with Dr.

9    Olswanger did not note any memory deficiencies.

10         On March 23, 2019, Plaintiff alleges she woke up and found she was unable

11   to lift her head off her pillow due to severe neck pain.  AR 644.  She described her

12   neck feeling as though "it had permanently twisted to the left, and had a stabbing

13   pain."  *Id*.  She reported numbness in her thumbs and first two fingers and vision

14   changes.  *Id*.  Plaintiff reportedly went to the emergency room where a cervical x-

15   ray was taken but did not reveal any acute symptoms.  AR 645, 667.  Plaintiff

16   stopped working on March 30, 2019.  AR 1759.

17         Plaintiff saw neurosurgeon Michael Schlitt, M.D., on June 26, 2019.  AR

18   714.  Plaintiff reported gradually worsening pain symptoms in her neck with "some

19   degree of numbness radiating down both arms."  *Id*.  Plaintiff stated her

20   "symptoms improve with nothing" despite having tried physical therapy, massage

therapy, chiropractic therapy, traction therapy, various medications, acupuncture, and lifestyle modification. *Id.* Plaintiff indicated opioids and muscle relaxers helped, "but less so than before." *Id.* Dr. Schlitt noted "kyphosis of the cervical region," found Plaintiff could follow simple and complex commands, did not have any "apparent deficits with short or long term memory," and was not in acute distress, although she did appear uncomfortable throughout the exam. AR 717. Dr. Schlitt reviewed a CT scan performed on April 30, 2019, which revealed "reversal of the normal cervical lordosis with the center of the reversal at C5-C6 where the disc is partially collapsed and there are marginal osteophytes." AR 718. Dr. Schlitt was unable to "say whether there is any significant canal narrowing." *Id.* Ultimately, Dr. Schlitt diagnosed Plaintiff with "symptomatic cervical degenerative disc disease." AR 720. Plaintiff was advised of her surgical options, namely an anterior cervical discectomy and fusion at C5-6. *Id.* Plaintiff was also advised of the lengthy and difficult recovery that often follows surgery, and that Dr. Schlitt did "not necessarily expect 100% complete pain control" afterwards. *Id.*

Plaintiff saw Dr. Schlitt again on July 31, 2019. AR 721. Her symptoms had not improved, so she and Dr. Schlitt revisited Plaintiff's surgical options and the risks. AR 726. Plaintiff elected to have the surgery and underwent the procedure on August 13, 2019. AR 735. One week after surgery, a care provider

noted Plaintiff was "doing as expected." AR 739. Three weeks post-operation, on September 3, 2019, Plaintiff saw Dr. Schlitt who noted Plaintiff was "doing about as expected" and "congratulated [Plaintiff] on improvements in her numbness and tingling as these tend to be the last to improve." AR 745. Dr. Schlitt also noted Plaintiff seemed "to sill have significant neck shoulder and right arm pain." *Id*.

Plaintiff continued to see Dr. Olswanger after her surgery. On September 17, 2019, Plaintiff reported some improvement in hand numbness, but believed there was "[l]ots of room for improvement in regards to pain." AR 657. On October 3, 2019, Plaintiff expressed concerns about MS. AR 683. Dr. Olswanger ordered an MRI to rule out the possibility. *Id*. In the meantime, Plaintiff saw Dr. Olswanger's colleague, Derek E. Sucharda, PA-C, on October 7, 2019 for a postop follow-up exam. AR 746. Plaintiff reported ongoing pain and numbness; nonetheless, PA-C Sucharda found Plaintiff was "doing as expected" as she continued to recover from surgery. AR 752. PA-C Sucharda also reviewed Plaintiff's postop x-rays, noting a screw tip approximately 2.5mm posterior to the C5 vertebral body, but did not believe the screw could account for Plaintiff's global upper extremity symptoms. *Id*. PA-C Sucharda did not believe there were any underlying cervical spinal cord pathologies but ordered nerve conduction studies of Plaintiff's upper extremities to rule out the possibility. *Id*. The resulting electromyography (EMG), conducted on November 4, 2019, was "normal without

electrical evidence of cervical radiculopathy or focal neuropathy."  AR 686, 688.

Plaintiff's MRI was performed on December 20, 2019.  AR 647.  It revealed generally normal and unremarkable findings.  *Id*.  Overall, there were "no definite findings to suggest the source of the patient's symptoms."  *Id*.

**B.    Plaintiff's LTD Benefits Application**

*1.  Initial Determination*

Plaintiff applied for Long Term Disability ("LTD") benefits under the policy held by her new employer.  AR 241.  Defendant received Plaintiff's application on August 6, 2019.  *Id*.  After the requisite 180-day elimination period during which a claimant must continuously be disabled as defined by the policy, Defendant determined Plaintiff was entitled to 60 days of disability benefits beginning September 27, 2019 and ending November 12, 2019.  AR 307.

In reaching this determination, Defendant reviewed "all information on file," which included, but was not limited to, the following: a Behavioral Health Questionnaire and Medical Request Form from Dr. Olswanger dated October 25, 2019; office visit notes from Dr. Olswanger from March 4, 2019 through October 24, 2019; Providence Neuroscience Institute records from June 25, 2019 through October 7, 2019; and a Peer Review conducted by Dr. Ryan S. Trombly dated September 4, 2019.  AR 308.

Defendant also obtained expert opinions from two neurosurgeons and one

psychiatrist who each reviewed and assessed Plaintiff's claim file.  The first expert, Ryan S. Trombly, M.D., reviewed Plaintiff's file on June 12, 2019, July 8, 2019, and again on September 4, 2019.  AR 3406.  Dr. Trombly considered Plaintiff's occupation as a Patient Services Representative, which he described as "a sedentary job position at which [Plaintiff] must check in patients and answer phones and schedule patients and perform clerical tasks.  [Plaintiff] must attend meetings and show concern for efficiency and cost effectiveness and must complete clerical and sedentary duties."  AR 3409.  Dr. Trombly noted Plaintiff's "cervical radiculopathy, cervical dystonia, [and] disc osteophyte complex" were known conditions dating back to at least 2016.  *Id*.  Since 2016, Plaintiff had not developed any "new fracture or focal neurologic deficit[s]" that would support functional restrictions.  *Id*.  Initially, Dr. Trombly concluded that even though Plaintiff experienced chronic pain and some discomfort, the clinical records did not support an inability to carry out her normal sedentary job duties.  AR 3408-09.  In his final review, Dr. Trombly concluded Plaintiff would "need 8 weeks out of work in order to make a full recovery . . . .  However, between 03/21/19 and 08/12/19, the records do not support any restrictions from a neurological point of view."  AR 3418.

Defendant's second expert, neurosurgeon David E. Gutierrez, D.O., opined on October 11, 2019 that Plaintiff was functionally limited, but only from August

13, 2019 through November 13, 2019 following Plaintiff's surgery.  AR 3492.  Dr. Gutierrez noted Plaintiff's clinical records reflected only some limited range of motion in the cervical regions; no deficits in the upper or lower extremities; no reflex or sensory changes that would be consistent with radiculopathy; no significant stenosis in the cervical spine; or any other findings that would support functional limitations.  AR 3491.

Finally, psychiatrist David P. Yuppa, M.D., also concluded Plaintiff was not functionally limited.  AR 3611.  Dr. Yuppa opined that "[t]he treating provider's opinion of no work is not well supported by medically acceptable clinical diagnostic techniques including mental status examinations, psychological and/or neuropsychological testing and is inconsistent with the other substantial evidence in the claims file . . . ."  AR 3610.  To support his opinion, Dr. Yuppa noted that Plaintiff was primarily treated for her physical conditions and found that Dr. Olswanger's opinion regarding Plaintiff's mental limitations was not supported by the medical evidence in the record.  AR 3610-11.  Specifically, Dr. Yuppa noted the stable condition of Plaintiff's anxiety, the lack of psychiatric complaints in the record, and the normal psychiatric test results.  AR 3611.

Defendant ultimately determined Plaintiff's medical documentation did not support a finding of disability within the meaning of the LTD insurance policy.  AR 310.  Plaintiff's Regular Occupation as a Medical Clerk required sedentary

demand activities, which might include "exerting up to 10 pounds of force occasionally or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects including the human body," according to the Dictionary of Occupational Titles. *Id*.; *see also* AR 227-28. Defendant further explained Sedentary work generally "involves sitting most of the time, but may involve walking or standing for brief periods of time." AR 310. Defendant found that other than the post-operation recovery period between August 13, 2019 and November 18, 2019, Plaintiff's alleged physical limitations were not supported by the medical records. AR 309. Defendant also concluded Plaintiff's alleged anxiety remained stable throughout her medical history and was not reported as a "primary restricting diagnosis." AR 310. Plaintiff was deemed not disabled within the meaning of the LTD insurance policy as it applied to Plaintiff's Regular Occupation.

After receiving Defendant's initial determination letter, Plaintiff sent supplemental materials to Defendant for review, including declarations from Dr. Olswanger and Plaintiff. AR 322, 326. Defendant responded, noting the supplemental information was either duplicative or did not reveal any new information not already considered. AR 457-58. Defendant did not change its determination regarding Plaintiff's LTD benefits claim. AR 458.

//

ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR JUDGMENT ~ 14

1  *2.  Plaintiff's Appeal*

2  Plaintiff appealed Defendant's decision on March 5, 2020.  AR 615.

3  Plaintiff submitted new records in her appeal, including the post-surgical MRI,

4  additional exam notes from Dr. Olswanger, and the EMG (electromyography) test.

5  ECF No. 19 at 13 (citing AR 647, 649-54, 688).  Plaintiff also submitted a 2019

6  psychological exam conducted by Ronald D. Page, Ph.D.  AR 627-31.  Defendant

7  obtained two additional experts to review Plaintiff's claim file: Lucien J. Parrillo,

8  M.D., a physician board-certified in pain management and occupational medicine,

9  and Elana S. Mendelssohn, Psy.D., a clinical psychologist who specializes in

10  psychological and neuropsychological disability claims.  ECF No. 19 at 13-14

11  (citing AR 883-86, 887-89).

12  Dr. Parrillo concluded the record did not support a finding of physical

13  impairment outside the eight-week post-surgery recovery period.  AR 854.  Dr.

14  Parrillo focused primarily on the CT scans and x-rays of Plaintiff's cervical spine,

15  and the December 2019 MRI.  *Id*.  Dr. Parrillo noted the CT scans taken prior to

16  Plaintiff's surgery did not reveal any direct impingement on exiting nerve roots

17  that would have resulted in demonstrable motor or sensory deficits nor did they

18  reveal direct compression of the exiting nerve roots.  *Id*.  Following the surgery, x-

19  ray imaging revealed the healing fusion at C5-6 but no other remarkable findings.

20  *Id*.  The EMG testing was interpreted as normal without electrical evidence of

ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR JUDGMENT ~ 15

cervical radiculopathy/focal neuropathy.  *Id*.  Finally, Dr. Parrillo noted the MRI did not reveal any definite findings regarding the source of Plaintiff's symptoms. *Id*.

Dr. Mendelssohn reviewed Plaintiff's claim file and conducted peer-to-peer interviews with Dr. Oslwanger and Dr. Page regarding their assessments of Plaintiff's ability to work.  ECF No. 19 at 14; AR 870.  Dr. Mendelssohn concluded the record did not support a finding of cognitive or psychological impairment, particularly because Plaintiff's anxiety was generally secondary to her physical ailments and because the record did not indicate any behavioral abnormalities or cognitive deficits.  AR 870-71.  Dr. Mendelssohn noted a 2019 social security disability evaluation cited a "cognitive disability" and PTSD, but the same report also indicated Plaintiff was able to work from a psychiatric standpoint.  AR 871.  Notably, the "evaluation did not include cognitive test findings to substantiate the presence of cognitive impairment."  *Id*.

Dr. Mendelssohn's peer-to-peer interviews with Dr. Olswanger and Dr. Page confirmed her conclusions.  Dr. Olswanger stated that Plaintiff's primary medical issues related to her neck pain.  *Id*.  He further stated Plaintiff's reported anxiety and cognitive problems were difficult to "put into objective findings."  *Id*.  Dr. Page indicated his diagnosis of a "cognitive disability" was based on another care provider's analysis of Plaintiff, as Dr. Page himself did not perform any cognitive

1    testing.  *Id*.  Dr. Page also confirmed he did not perform any validity testing on

2    Plaintiff but based his diagnosis of PTSD on his own observations of Plaintiff.  *Id*.

3    Dr. Mendelssohn pointed out that PTSD was not present in any other medical

4    records for Plaintiff.  *Id*.  Finally, Dr. Page stated Plaintiff was able to work despite

5    her PTSD and possible cognitive issues, but that her pain and life changes caused

6    her distress.  *Id*.

7        Based on Dr. Parrillo's and Dr. Mendelssohn's opinions, Defendant upheld

8    its decision regarding Plaintiff's disability claim.  ECF Nos. 17 at 12, 19 at 16.

9        Plaintiff responded to Defendant's decision on May 26, 2020.  ECF Nos. 17

10   at 12-13, 19 at 16.  Plaintiff's response focused primarily on Dr. Mendelssohn's

11   past work in reviewing disability claims, arguing Dr. Mendelssohn's approach was

12   biased.  ECF No. 17 at 12-16.  To support her argument, Plaintiff submitted

13   additional documents that she argued "reveal a clear pattern" in which Dr.

14   Mendelssohn disregards subjective symptom testimony, disregards the conclusions

15   and clinical findings of a claimant's treatment providers, and discredits treatment

16   providers where they failed to provide detailed objective measurements or validity

17   testing of the claimant's symptoms.  AR 895.  The additional materials included

18   discovery responses from another case demonstrating the volume of reviews Dr.

19   Mendelssohn conducted for another insurance company (AR 924-25) and 37

20   reports written by Dr. Mendelssohn for other disability benefits cases (AR 940-

ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR JUDGMENT ~ 17

1179).  Plaintiff also provided analyses from three district courts criticizing the

adequacy of Dr. Mendelssohn's reviews.  AR 898-99.  Finally, Plaintiff included

new declarations from Dr. Olswanger (AR 1187-88), Dr. Page (AR 1195-99), and

Dr. Marks (AR 1201-02), each challenging Dr. Mendelssohn's findings.

Defendant did not consider the discovery responses from other cases or the

37 reports written by Dr. Mendelssohn because they did not relate to Plaintiff's

claim.  AR 880.  Plaintiff continued to challenge Defendant's denial of her claim.

AR 1740-44.  On June 23, 2020, Defendant obtained updated reviews from Dr.

Mendelssohn (AR 1476-78) and Dr. Parrillo (AR 1736-37).

In her addendum, Dr. Mendelssohn maintained the record did not support a

finding of functional impairment.  AR 1477.  She pointed out the declaration

submitted by Dr. Marks was a review of his 2018 evaluation, which predated the

timeframe under consideration, and did not contain more recent data.  *Id*.  She

further noted the additional documents submitted by Plaintiff did not contain

"clinical data to substantiate how the claimant's reported symptoms/diagnoses

impact functionality."  *Id*.  Dr. Mendelssohn concluded her addendum by noting

that despite Plaintiff's alleged level of anxiety, her medical records did not contain

any referrals to behavioral health treatment, which was inconsistent with an

impairing psychological condition.  *Id*.

Dr. Parrillo likewise found no new clinical evidence to support workplace

restrictions or limitations.  AR 1737.  Specifically, Dr. Parrillo noted there were no

clinical findings of new focal neurological deficits that would impede physical

movement nor were there any new diagnostic tests or imaging that showed

significant neurocompression that would result in physical limitations.  *Id*.  Dr.

Parrillo concluded there was no additional information that would change his

original assessment of Plaintiff's claim file.  *Id*.

Based on the addenda provided by Dr. Mendelssohn and Dr. Parrillo,

Defendant upheld its determination that Plaintiff was not entitled to benefits after

November 18, 2019.  AR 1464.

### FINDINGS OF FACT

Having thoroughly reviewed the record *de novo*, the Court makes the

following findings of fact pursuant to Rule 52(a)(1):

1.    Plaintiff began working as a receptionist for Providence St. Joseph

Health in October 2017.  AR 644.  Plaintiff's Regular Occupation as a

receptionist/medical clerk is generally defined in the Dictionary of Occupational

Titles as follows: the position is mostly sedentary with occasional lifting, carrying,

pushing, and pulling of up to 10 pounds; the position requires interaction with

patients for intake purposes; the position does not involve exposure to

environmental conditions such as extreme heat or cold, moving mechanical parts,

or exposure to toxic chemicals; and the position requires moderate aptitude in areas

ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR JUDGMENT ~ 19

such as general learning and verbal, numerical, and clerical skills.  AR 227-28.

2.    Plaintiff was involved in a car accident in 2016 but did not begin seeking regular medical care for her neck pain and anxiety until 2018.  *See, e.g.*, AR 329-58.

3.    The Court rejects the February 5, 2018 opinion of Dr. Marks because the examination predates the timeframe covered by Plaintiff's claim for disability benefits and thus, raises questions as to whether it is an accurate assessment of Plaintiff's more recent cognitive state.  The letter submitted by Dr. Marks in May 2020 to support Plaintiff's disability claim is also unpersuasive because it did not contain any new information or analyses to update Dr. Marks' prior findings.  *See* AR 1201-02.  Plaintiff's argument that Dr. Marks opinion is more credible solely because he examined Plaintiff in-person is without merit.  The "treating physician" rule imposed in Social Security cases does not apply to ERISA benefits determinations.  *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).  Dr. Marks' one-time assessment is contrary to the weight of the medical evidence, which does not indicate Plaintiff was cognitively or psychologically disabled.

4.    The Court rejects Dr. Olswanger's declarations indicating that, as of April 3, 2019, Plaintiff was unable to fulfill the essential duties of her Regular Occupation as a medical receptionist or that she was unable to return to work

1  following her neck surgery.  AR 623-25; 642; 1187-88.  As Plaintiff's treating

2  physician since at least 2018, Dr. Olswanger was best suited to render opinions

3  regarding Plaintiff's functional abilities.  However, his declarations regarding

4  Plaintiff's functional abilities do not comport with his own treatment notes for

5  Plaintiff or the medical record as a whole.

6       To illustrate, throughout 2018 and the majority of 2019, Dr. Olswanger

7  regularly noted Plaintiff was alert, cooperative, dressed appropriately, and not in

8  acute distress despite complaints of chronic debilitating pain.  AR 358, 356, 354,

9  352, 350, 348, 346, 342, 340, 338, 336.  Following Plaintiff's neck surgery, Dr.

10 Olswanger continued to report Plaintiff was alert, cooperative, dressed

11 appropriately, and not in acute distress.  AR 334, 332, 330.  Additionally, post-

12 operation cervical imaging, nerve testing, and an MRI revealed generally normal

13 and unremarkable results.  AR 647, 686, 688, 752.

14      Regarding Plaintiff's cognitive limitations, Dr. Olswanger's notes

15 consistently reflect stable or even improved anxiety symptoms.  AR 357, 355, 353,

16 351, 337, 331, 329.  Dr. Olswanger did not indicate Plaintiff suffered from

17 memory deficiencies nor did he refer her to a mental health specialist.  Notably,

18 Dr. Olswanger stated Plaintiff's physical issues were the primary concerns during

19 her care visits, not her anxiety.  AR 870.  Dr. Olswanger's assessments regarding

20 Plaintiff's inability to fulfill her Regular Occupation due to cognitive and

ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR JUDGMENT ~ 21

psychological impairments are inconsistent with the factual record.

5.    The Court rejects Dr. Page's conclusion that Plaintiff was unable to return to work due to anxiety and PTSD.  AR 627-31.  Dr. Page's single evaluation of Plaintiff in 2019 is not consistent with the record as a whole.  Dr. Page diagnosed Plaintiff with PTSD, yet no other medical records indicate such a diagnosis.  Furthermore, Dr. Page stated his assessment of Plaintiff's cognitive disability was based exclusively on Dr. Marks' 2018 memory assessment; Dr. Page did not conduct any independent testing.  AR 1197.  Finally, none of Plaintiff's other care providers, including her primary care physician, Dr. Olswanger, noted cognitive deficiencies.  Dr. Page's findings are inconsistent with the factual record.

6.    The Court fully credits Dr. Parrillo's conclusion that Plaintiff was not physically disabled outside the eight-week post-surgical recovery period.  Dr. Parrillo noted the objective medical evidence prior to Plaintiff's surgery, specifically CT scans from April 2019 and July 2019, did not demonstrate any direct nerve impingement or compression that would result in motor or sensory deficiencies.  AR 854.  That analysis is consistent with Dr. Trombly's initial review of Plaintiff's claim in which he considered Plaintiff's mostly sedentary job duties compared to the objective medical evidence, concluding Plaintiff's relatively stable cervical back condition would not have supported a finding of disability within the meaning of the insurance policy.  AR 3409.  Dr. Parrillo's

analysis also aligns with Dr. Gutierrez's opinion.  AR 3491.  Additionally, Dr. Parrillo's analysis is consistent with Plaintiff's own neurosurgeon's assessment of Plaintiff's imaging results, which indicated only a partial disc collapse and inconclusive results regarding the narrowing of the spinal canal.  AR 718.

Dr. Parrillo also reviewed Plaintiff's post-surgery records and maintained his assessment that there was no neuromuscular impairment that would have functionally impaired Plaintiff.  AR 854.  That analysis is consistent with other medical records that indicated Plaintiff's post-surgical recovery was going as expected (AR 739, 745, 752) and no underlying spinal or nerve pathologies revealed a definite source of Plaintiff's symptoms (AR 647, 686, 688).  Moreover, Plaintiff was warned of the possibility that her pain symptoms would not completely subside with surgery.  AR 720.  Dr. Parrillo's review of Plaintiff's claim is consistent with the totality of the medical records.

7.    The Court fully credits Dr. Mendelssohn's findings that Plaintiff was not cognitively or psychologically disabled.  Dr. Mendelssohn noted Plaintiff's records indicated a history of anxiety but did not reflect any mental status abnormalities.  AR 871.  Notably, Plaintiff was not under the care of a mental health professional.  *Id*.  Dr. Mendelssohn also noted Plaintiff's psychiatric issues were not the primary concern during her medical evaluations nor was she restricted from work due to her psychiatric conditions.  *Id*.  Dr. Mendelssohn's analyses align

with Dr. Yuppa's initial review of Plaintiff's claim, in which he found Plaintiff's psychological conditions were not her primary issue and her reported anxiety remained stable throughout her medical history.  AR 3610-11.  Dr. Mendelssohn's assessment remained the same in her addendum following Plaintiff's appeal.  AR 1477.

8.    Plaintiff's allegations of Dr. Mendelssohn's bias are unpersuasive. Plaintiff points to the sheer volume of reviews Dr. Mendelssohn conducts for insurance companies to support her argument.  ECF No. 17 at 12.  However, the fact that Dr. Mendelssohn conducts a significant number of insurance claim reviews is insufficient on its own to demonstrate bias.  *Mitchell v. Aetna Life Ins. Co.*, 359 F. Supp. 2d 880, 890-91 (C.D. Cal. 2005); *Lee v. Kaiser Found. Health Plan Long Term Disability Plan*, 812 F. Supp. 2d 1027, 1039 (N.D. Cal. 2011). Plaintiff has not proffered any evidence to demonstrate Dr. Mendelssohn is biased against Plaintiff in particular or that Dr. Mendelssohn's findings in favor of insurance companies are directly tied to a financial incentive (*e.g*., her pay is increased for favorable determinations or her pay is contingent solely upon favorable determinations).

Moreover, the non-binding district court cases Plaintiff cited in her appeal criticizing Dr. Mendelssohn are distinguishable from Plaintiff's case.  In *Sisk v. Gannet Co.*, No. 3:11-CV-1159, 2014 WL 1575628, at *15 (M.D. Tenn. Apr. 21,

1    2014), the court found Dr. Mendelssohn's review "clearly inadequate" because she

2    failed to address a care provider's conclusions, which were not provided in the

3    claimant's file. *Id*. at *16. Here, Dr. Mendelssohn provided a detailed and

4    thorough review of Plaintiff's complete claim file. Plaintiff has not offered any

5    evidence that the file reviewed by Dr. Mendelssohn was incomplete.

6         In *Stephens v. Aetna Life Ins. Co.*, No. 1:11-CV-513, 2012 WL 2711378, at

7    *9 (S.D. Ohio July 9, 2012), the court questioned Dr. Mendelssohn's

8    "thoroughness and reliability" because she failed to analyze treatment notes that

9    contained check-box evaluations of the claimant's psychological symptoms and

10    because she did not contact treatment providers regarding the validity of their test

11    results. Here, Dr. Mendelssohn reviewed all evidence provided in Plaintiff's file

12    and contacted two of Plaintiff's care providers regarding their assessments. Dr.

13    Mendelssohn provided clear explanations as to why she rejected the assessments

14    and supported her reasons with evidence in Plaintiff's file. *See* AR 870-71, 1477.

15         Finally, in *Carey v. Bellsouth Short Term Disability Plan*, No. 1:06-CV-

16    2589WSD, 2008 WL 178714, at *12 (N.D. Ga. Jan. 17, 2008), the court

17    questioned Dr. Mendelssohn's objectivity, finding the record raised issues of fact

18    as to whether the insurance company made a good-faith determination or merely

19    tried to deconstruct the record to justify their denial. Here, the record speaks for

20    itself: Plaintiff's medical history simply does not reflect the degree of

ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR JUDGMENT ~ 25

psychological impairment necessary for a finding of disability.

9.     Plaintiff's criticism of Dr. Mendelssohn's review techniques is also unpersuasive.  ECF No. 17 at 19-20.  Plaintiff argues that Dr. Mendelssohn improperly focuses on "what was not" rather than existing contradictory evidence. However, Plaintiff's argument does not overcome the fact that the bulk of Plaintiff's medical records do not reflect a significant psychological or cognitive impairment.  Regular notations of stable or improved anxiety and a single diagnosis of PTSD do not prove disability.  Therefore, Dr. Mendelssohn correctly concluded that Plaintiff was not disabled by her psychological condition based on the weight of the evidence.

## CONCLUSIONS OF LAW

Based upon the findings of fact above, the Court makes the following conclusions of law pursuant to Rule 52(a)(1):

1.     Plaintiff has not satisfied her burden of proving disability.

2.     Plaintiff is not "disabled" as that term is defined in the policy because the record as a whole does not support a finding that she is "unable to perform the material duties of . . . her Regular Occupation" and that she is "unable to earn 80% or more of . . . her Indexed Earnings from working in . . . her Regular Occupation."

3.     By virtue of not being disabled, Plaintiff is not entitled to additional benefits under the policy.

ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR JUDGMENT ~ 26

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Judgment (ECF No. 17) is **DENIED**.

2.  Defendant's Motion for Judgment (ECF No. 19) is **GRANTED**.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

**DATED** March 1, 2021.



THOMAS O. RICE
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR JUDGMENT ~ 27